IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MOBILE COUNTY WATER, SEWER AND FIRE PROTECTION AUTHORITY, INC., ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION 07-0357-WS-M |
| MOBILE AREA WATER AND SEWER SYSTEM, INC., ) ) ) ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Stay (doc. 13) these proceedings on grounds of *Colorado River* abstention. The Motion has been fully briefed and is ripe for disposition.[1]

**I.     Background.**

The narrow issue presented to the Court at this time is whether it is appropriate to stay this action pending resolution of a parallel state-court action, pursuant to *Colorado River* abstention principles. The logical starting point is to examine the two lawsuits.

Defendant, Mobile Area Water and Sewer System ("MAWSS"), is a public corporation which provides water and sewer services within the City of Mobile, Alabama, and certain surrounding areas. (Complaint (doc. 1), ¶ 4.) Meanwhile, plaintiff, Mobile County Water, Sewer and Fire Protection Authority ("MCWSFPA"), is a public corporation that is a rural service provider, selling water, sewer, and fire protection services to residences and businesses in Mobile County, Alabama, but not to those within the City of Mobile. (*Id.*, ¶ 3.) Their dispute

---

[1]     Defendant has requested oral argument on its Motion. Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument. After careful consideration of the parties' written submissions, the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the straightforward legal issues presented in the Motion. Accordingly, defendant's request for oral argument is **denied**.

originates from the fact that they have developed partially overlapping service territories, inasmuch as both MAWSS and MCWSFPA provide water and sewer services to certain rural customers outside the City of Mobile.  (*Id.*, ¶ 4.)

On August 3, 2005, MCWSFPA filed suit against MAWSS in the Circuit Court of Mobile County, Alabama (the "State Court Action").  As pleaded in the Second Amended Complaint (doc. 13, at Exh. A) filed therein, the crux of the State Court Action is MCWSFPA's contention that MAWSS is encroaching upon MCWSFPA's exclusive service area by extending its services within that area.  The State Court Action alleges that MAWSS's conduct in this regard violates Alabama Code § 11-50-1.1,[2] that it breaches the terms of a certain settlement agreement executed by the parties in 1989, that it constitutes trespass,[3] and that MCWSFPA is entitled to money damages, as well as declaratory and injunctive relief.  According to MAWSS, the State Court Action has been the subject of "substantial proceedings," as "paper discovery involving substantial documentation has been traded, ... [and] discovery is underway and has been so for some time."  (Defendant's Brief (doc. 13), at 5.)[4]  Thus, all indications are that the State Court Action remains pending today in Mobile County Circuit Court, that discovery is ongoing, and that no trial or summary judgment motion practice is looming near.

On May 18, 2007, nearly two years after initiating the State Court Action, MCWSFPA filed the instant action (the "Federal Action") against MAWSS in this District Court.  The

---

[2] That statute reads, in pertinent part, as follows: "Municipalities are hereby prohibited from acquiring, or duplicating any services of, any waterworks system or any part thereof, operated by a corporation or association which has been organized under ... Sections 11-88-1 through 11-88-21 ... without the consent of a majority of the members of the governing board of said corporation or association."  Ala. Code § 11-50-1.1.  MCWSFPA has pleaded in the State Court Action that it was organized under the provisions of Ala. Code §§ 11-88-1 *et seq.*, such that the protections of § 11-50-1.1 apply to it.

[3] The trespass cause of action has since been dismissed in the State Court Action.  The remaining claims center on whether MAWSS is unlawfully duplicating MCWSFPA's system, in violation of § 11-50-1.1, and whether MAWSS is in violation of the 1989 settlement agreement.

[4] MCWSFPA appears to concur with this characterization, as it states that "the State proceeding is still in the discovery phase and there is no indication that trial is imminent." (Plaintiff's Brief (doc. 15), at 5-6.)

Federal Action bears factual similarities to, and arises from similar events as, its state court counterpart. The First Amended Complaint (doc. 6) alleges that the parties "compete in the sale of water and sewer to residents of certain geographic areas in Mobile County" and that MAWSS has a written policy of refusing to sell sewer service to customers unless they also purchase water service from MAWSS, thereby "interfering with a potential customer's freedom to choose between competing suppliers of water." (Doc. 6, ¶ 2.)[5]

The First Amended Complaint specifically quotes Ala. Code § 11-50-1.1, alleges that MCWSFPA is entitled to its protections, and suggests that MAWSS is in violation of same. (*Id.*, ¶¶ 5-6.) However, plaintiff stops short in the Federal Action of asserting a claim against MAWSS for violation of § 11-50-1.1, which claim is already joined in the State Court Action. Instead, plaintiff's causes of action in the Federal Action are confined to antitrust claims, as MCWSFPA alleges that MAWSS is in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, as well as a claim under an Alabama statute that creates a right of action for one "injured or damaged by an unlawful trust, combine or monopoly, or its effect, direct or indirect." Ala. Code § 6-5-60(a). The gist of the alleged unlawful conduct on which the Federal Action is predicated is MAWSS's practice of "tying" the purchase of water service to the purchase of sewer service as an all-or-nothing system designed to leverage its dominance in the sewer service market to oblige sewer customers to purchase water service from MAWSS. MCWSFPA also provides water service in that area, and will provide such service regardless of which supplier a customer uses for sewer service. The result, plaintiff alleges, is that MAWSS has abused its market power in the area of sewer service to gain an unfair competitive advantage in the sale of water service, all to MCWSFPA's detriment. (Doc. 6, ¶¶ 14-24.)

MAWSS filed an Answer (doc. 11) to the First Amended Complaint on June 22, 2007, and the parties' Rule 26 Meeting Report is due on or before September 4, 2007, at which time this action will be ready to proceed with discovery.

---

[5] The First Amended Complaint offers additional insight into the nature of this competition, asserting that within "a not insubstantial area outside the City of Mobile, Alabama, but within Mobile County, Alabama," both parties "actively solicit[] the business of developers and new commercial accounts ... - affording such customers the economic benefit of a choice between competing price and services." (Doc. 6, ¶ 13.)

**II.     Analysis.**

Given this procedural posture of the two lawsuits, MAWSS contends that the Federal Action should be stayed pursuant to *Colorado River* abstention principles. MCWSFPA disagrees. Both sides have submitted written memoranda delineating their respective positions and the authorities upon which they rely.

As a general proposition, "federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them." *Maharaj v. Secretary for Dep't of Corrections*, 432 F.3d 1292, 1303 (11th Cir. 2005) (citation omitted). The Eleventh Circuit has stressed that "[a] policy permitting federal courts to yield jurisdiction to state courts cavalierly would betray this obligation." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004). For that reason, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (citation omitted). That said, the *Colorado River* doctrine authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances." *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004); *see also Ambrosia Coal*, 368 F.3d at 1328 ("federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances"). Quite simply, the question presented here is whether such exceptional circumstances exist. The undersigned answers this question in the negative.

The Supreme Court has framed the *Colorado River* doctrine as an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[6] In applying *Colorado River*, the Court is mindful of the admonition that "[o]nly the clearest of justifications will warrant dismissal of the federal action" under that

---

[6] At least one appellate court has questioned whether lower courts have heeded this language, opining that "*Colorado River*, intended by the Court to be a shallow stream, threatens to overflow its banks due to the efforts of district court judges to control burgeoning dockets." *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988). This Court will steadfastly resist succumbing to any urge to expand *Colorado River*'s circumscribed reach in the name of docket control and expedience.

doctrine. *Ambrosia Coal*, 368 F.3d at 1329 (citation omitted). Indeed, using *Colorado River* abstention to stay a federal action "in deference to parallel state proceedings is an extraordinary step that should not be taken absent a danger of a serious waste of judicial resources." *Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 383 (11th Cir. 1988).

The Eleventh Circuit has identified six factors that district courts must consider in assessing whether *Colorado River* abstention is proper, to-wit: (i) whether any court has assumed jurisdiction over property, (ii) the relative inconvenience of the fora, (iii) the potential for piecemeal litigation, (iv) the temporal order in which each forum obtained jurisdiction, (v) whether state or federal law governs, and (vi) whether the state court is adequate to protect the parties' rights. *See Ambrosia Coal*, 368 F.3d at 1331. This Court "must weigh these factors with a heavy bias in favor of exercising jurisdiction." *TranSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998); *see also Moorer*, 374 F.3d at 997 (in considering important factors in a particular case, the balance must be "heavily weighted in favor of the exercise of jurisdiction"). No one factor is necessarily dispositive; rather, "the factors must be considered flexibly and pragmatically, not as a mechanical checklist." *Ambrosia Coal*, 368 F.3d at 1332; *see also Maharaj*, 432 F.3d at 1304 ("The decision of whether to stay a case, however, does not rest on a mechanical checklist, and the weight of each factor will vary from case to case."). Depending on the circumstances, "[o]ne factor alone can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997.

Application of the *Colorado River* factors to the specific circumstances presented here reveals that the first (assumption of jurisdiction over property) and second (relative inconvenience of fora) factors are largely inconsequential, and neither favor nor disfavor abstention. *See Maharaj*, 432 F.3d at 1306 (first two *Colorado River* factors are not particularly helpful, where there is no real property at issue and neither forum appears substantially more or less convenient than the other). This is so because there is no disputed *res* in this action (and, even if there were, neither the Circuit Court of Mobile County nor this Court has assumed jurisdiction over it or has been asked to do so) and because both parties acknowledge that there is no meaningful difference in the relative convenience of the two fora. (Defendant's Brief (doc.

13), at 6; Plaintiff's Brief (doc. 5), at 5.)[7]

With respect to the third *Colorado River* factor, the potential for piecemeal litigation, MAWSS contends that it "obviously" weighs heavily in favor of abstention because the two actions involve the same parties and "the same general matters," and litigation of both actions simultaneously will inevitably result in a piecemeal resolution of issues. (Defendant's Brief, at 5.) The Court strongly disagrees. For starters, as the Eleventh Circuit explained in *Ambrosia Coal*, the piecemeal litigation factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." 368 F.3d at 1333. Here, to be sure, there would be some duplication of effort and potentially piece-by-piece decision-making if the state and federal lawsuits were allowed to proceed on parallel tracks, but "there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts." *Id.* MAWSS has offered no persuasive argument or authority that the "abnormally excessive or deleterious" threshold is satisfied here; therefore, *Ambrosia Coal* teaches that this factor does not support abstention.[8]

---

[7] In deeming the first factor unhelpful, the Court acknowledges defendant's argument to the contrary. According to MAWSS, this factor favors abstention because both lawsuits involve a territorial dispute whose resolution may affect third parties' rights, and because the state court took up the territorial dispute first. (Doc. 13, at 4; doc. 16, at 4-5.) But this Federal Action is about alleged illegal tying practices, not a territorial dispute. Nothing this Court decides here would prevent MAWSS from expanding into or operating in any particular territory. More importantly, MAWSS's argument advocates a wholesale, unprecedented reinvention of the first *Colorado River* factor, and misapplies the law. In *Ambrosia Coal*, the Eleventh Circuit sharply criticized the district court for concluding that the first factor favored abstention because the litigation involved use and development of land in Puerto Rico. Calling this a "clear misapplication of *Colorado River*," the *Ambrosia Coal* panel explained that "[b]ecause the relevant cases are not proceedings in *rem*, neither court has jurisdiction over property, and the first *Colorado River* factor does not favor abstention." 368 F.3d at 1332; *see also Noonan*, 841 F.2d at 382 ("The first factor is inapplicable, as neither court has assumed jurisdiction over any property."). This Court declines MAWSS's invitation to make a similar misstep to that of the district court in *Ambrosia Coal*.

[8] In an apparent effort to shoulder this burden, MAWSS suggests that this case is exceptional because it involves "two publicly created entities" and "may have far-reaching consequences for literally thousands of Mobile County water and sewer services customers."

There is another reason why the piecemeal litigation factor does not favor *Colorado River* abstention in this case. The Eleventh Circuit has declared that this factor "weighs far more heavily in favor of denying the request for a stay" where the movant fails to show "even a reasonable probability that the state court action will be resolved in such a way as to 'moot' any of the issues currently before us." *Maharaj*, 432 F.3d at 1306; *SST Global Technology, LLC v. Chapman*, 270 F. Supp.2d 444, 465 (S.D.N.Y. 2003) ("The presence of the federal securities law claim, therefore, makes it plain that abstention as to the state law claims would not operate to reduce piecemeal litigation."). That is precisely the case here. The claims pending in this action and the State Court Action may involve some degree of overlapping facts, but the legal theories are completely different. What gain in terms of efficiency or conservation of judicial resources could be achieved by staying this action to allow the State Court Action to proceed? There is none that this Court can perceive. Irrespective of how the breach of settlement agreement and § 11-50-1.1 claims are resolved in Mobile County Circuit Court, the antitrust causes of action joined in this action will remain outstanding.[9] MAWSS has not argued, and apparently cannot

---

(Defendant's Brief, at 8.) This is a *non sequitur*. Simply because the issues at stake in this case are being litigated by public entities, relate to matters of public concern and might affect many people says nothing about whether the burdens created by piecemeal litigation will be excessively onerous or harmful here. The public status of the litigants and degree of public interest in the issue being litigated are not recognized *Colorado River* factors. MAWSS neither offers any compelling rationale for why those facts should matter for *Colorado River* purposes, nor cites a single authority in which they have been deemed to fit into the applicable legal framework. Defendant repeatedly characterizes these public entity / public impact circumstances as exceptional, but never explains what renders them "exceptional" within the meaning of *Colorado River*. Why should the abstention analysis be any different in a low-stakes private dispute than in a (as MAWSS characterizes it) high-stakes public dispute? The Court is aware of no legal or practical reason why it would, given the absence of any nexus between the "public entity" and "public impact" factors and the objectives that *Colorado River* abstention is designed to promote. *See Moorer*, 374 at 997 (observing that *Colorado River* abstention rests on considerations of wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation).

[9] MAWSS admits as much, by stating that "the Mobile County Circuit Court cannot affect MCWSFPA's antitrust claims in any way .... Thus, this Honorable Court will still retain the antitrust claims and can deal with them at the proper time." (Reply Brief (doc. 16), at 7.)

reasonably argue, that a decision on the State Court Action claims concerning whether MAWSS is exceeding its contractual and statutory rights by encroaching on MCWSFPA territory will decide or obviate the need to decide whether MAWSS is engaging in unlawful "tying" practices under the Sherman Act.  Furthermore, MCWSFPA could not simply join its Sherman Act claims from a stayed federal case in the State Court Action because federal courts enjoy exclusive jurisdiction over those claims.[10]  Thus, the result of granting a stay in this case under *Colorado River* principles would not be to shorten, expedite or streamline the litigation, but would simply be to postpone, prolong, and delay the Federal Action until after the State Court Action was concluded, resulting in delays and inefficiencies for all concerned.  Stated differently, granting MAWSS the relief it requests in its Motion to Stay would do nothing to correct or mitigate the piecemeal litigation problem in this case, but would merely serve to prolong it.  This the Court will not do.[11]

With respect to the fourth *Colorado River* factor, the order in which jurisdiction obtained and the relative progress of the two actions, the critical inquiry is "how much progress has been made in the two actions."  *Ambrosia Coal*, 368 F.3d at 1333.  There is no question that the State Court Action predates the Federal Action by almost two years; however, it does not appear that considerable progress has been made in the State Court Action in the interim.  Both parties

---

[10] *See, e.g., Miller v. Granados*, 529 F.2d 393, 395 (5th Cir. 1976) ("the jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive"); *RMD Concessions, L.L.C. v. Westfield Corp.*, 194 F.R.D. 241, 242 n.3 (E.D. Va. 2000) ("Of course, plaintiff may not bring its Sherman Act claim in a state court, as federal courts have exclusive jurisdiction over such claims.").

[11] *See Moses H. Cone Memorial Hospital v. Mercury*, 460 U.S. 1, 28, 103 S.Ct. 927 (1983) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.").  Defendant urges the Court to follow *Classen v. Weller*, 516 F. Supp. 1243 (N.D. Cal. 1981), where the federal court granted a stay even though the federal claims were subject to exclusive federal jurisdiction.  In that case, however, the court specifically found that "a final decision in the state court may be dispositive of the federal claims."  *Id.* at 1244.  But MAWSS has made no such argument here; to the contrary, MAWSS admits that the federal claims in this case will emerge fully intact no matter what happens in the State Court Action. (Reply Brief, at 7.)  That fact greatly undermines any possible gain in terms of efficiency or conservation of judicial resources if a stay were entered here.

acknowledge that discovery is ongoing in that case, and there is no indication that a trial date has been set on the foreseeable horizon. Thus, despite its two-year head start, the State Court Action has not reached a far more advanced stage than has this case. While this factor favors abstention, it does so only mildly given the glacial pace of the Mobile County Circuit Court proceedings to date.

By defendant's own admission, the fifth *Colorado River* factor, whether state or federal law governs, is neutral because the Federal Action includes both federal and state-law claims. (Defendant's Brief, at 6.) This assessment is consistent with extant jurisprudence. *See Maharaj*, 432 F.3d at 1308 (fifth *Colorado River* factor does not weigh heavily in either direction where questions presented involve both state and federal law).[12]

The sixth and final *Colorado River* factor considers whether the state court is adequate to protect the parties' rights. MAWSS maintains that this factor is neutral because "there is no reason it can conceive" that the Mobile County Circuit court could not adequately protect the parties' rights. (Defendant's Brief, at 7.) Precedent reflects that this factor does not favor abstention where there is no suggestion that one or the other court could not protect the rights of all parties. *See Maharaj*, 432 F.3d at 1308 (sixth *Colorado River* factor is unavailing under facts of that case where there was no suggestion that either federal or state court would fail adequately to protect the rights of all parties).[13]

---

[12]  MAWSS struggles to formulate an argument that this consideration actually "slightly favors abstention ... given the fact the state-court action predates the federal action by almost two years." (Defendant's Brief, at 6-7.) The Court neither adopts nor agrees with this reasoning. Where, as here, a federal action involves both federal and state-law causes of action, the *Colorado River* factor concerning whether state or federal law provides the rule of decision is largely unhelpful, and defendant's attempt to import concepts from other *Colorado River* factors to make them count double is unavailing.

[13]  Plaintiff argues that this factor actually cuts against abstention because the Mobile County Circuit Court could not adequately protect its rights given its inability to hear the Sherman Act claims that plaintiff has filed in this Federal Action. (Plaintiff's Brief, at 7.) The Court agrees. Implicit in *Colorado River* abstention is the notion that if the federal case is stayed, the parties will be able to litigate their dispute completely in state court, obviating the need for a second legal proceeding. *See Moses H. Cone*, 460 U.S. at 28. But where, as here, the state court could not assume jurisdiction over the federal claims and there is no indication that a ruling on the state claims would effectively resolve or moot the federal claims, the state court

**III.     Conclusion.**

As stated previously, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Moorer*, 374 F.3d at 997 (citing *Colorado River*, 424 U.S. at 817-18). After careful consideration of the arguments and authorities presented by counsel, the undersigned finds that this is not one those "limited" or "exceptional" cases in which *Colorado River* abstention is warranted to prevent piecemeal litigation, to avoid misallocation of judicial resources, and to allow for efficient resolution of identical issues raised in federal proceedings that significantly postdate their state-court counterparts. To abstain under the circumstances present here would do nothing to avoid duplication of judicial effort, to bring about comprehensive disposition of litigation in a single action, or to prevent piecemeal litigation. Instead, to enter a stay at this time would merely insure that the dispute between MCWSFPA and MAWSS extends over the life of two consecutive state and federal lawsuits, rather than two concurrent state and federal lawsuits. Such a result would in no way advance the sound policy goals undergirding the *Colorado River* doctrine. Accordingly, defendant's Motion to Stay (doc. 13) is **denied**.

DONE and ORDERED this 27th day of August, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

would be incapable of adjudicating the dispute in its entirety and plaintiff's ability to vindicate its rights under those federal causes of action would be needlessly delayed pending the conclusion of the state court action. That fact warrants a determination that this factor weighs against abstention. *See Wood v. United States*, 1992 WL 58510, *2 (4th Cir. Mar. 27, 1992) ("the state action will not be an adequate vehicle for complete resolution of the parties' claims because the [plaintiffs'] cause of action ... is within the exclusive jurisdiction of the federal courts"); *SST Global Technology, LLC v. Chapman*, 270 F. Supp.2d 444, 467 (S.D.N.Y. 2003) (opining that state forum would not adequately protect plaintiff's interests, as a matter of law, because state court is barred from providing affirmative relief on plaintiff's federal securities law claim, such that this consideration weighs heavily against abstention).