**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MOBILE COUNTY WATER, SEWER AND FIRE PROTECTION AUTHORITY, INC.,** | ) ) ) | **PUBLISH** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0357-WS-M** |
| | ) | |
| **MOBILE AREA WATER AND SEWER SYSTEM, INC.,** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on cross-Motions for Summary Judgment (docs. 37, 81). The Motions have been briefed and are ripe for disposition at this time.[1]

**I.    Background.**

*A.    Relevant Facts.*

This lawsuit is the latest battleground in a decades-old turf war between two public

---

[1]    Also pending are Motions for Leave to File *Amicus Curiae* Briefs (docs. 45, 46) filed by non-parties, Alabama Rural Water Association and West Morgan - East Lawrence Water and Sewer Authority. "District courts have inherent authority to appoint or deny *amici* which is derived from Rule 29 of the Federal Rules of Appellate Procedure." *Jin v. Ministry of State Security*, --- F. Supp.2d ----, 2008 WL 2252777, *3 (D.D.C. June 3, 2008). The role of an *amicus* is to assist the court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 808 (3d Cir. 1991). In that spirit, and in the absence of any objection, the Motions by these entities as "friends of the court" are **granted** and their briefs will be considered; however, the utility of those briefs is minimal given (a) their redundant exposition of arguments duly articulated and fully covered by plaintiff; (b) the virtually identical content of each brief; and (c) their singular focus on a collateral issue that is distinct from the claims and defenses properly joined herein. *Amicus* briefs are not properly used to reiterate arguments and perspectives already before the Court. *See Jin*, 2008 WL 2252777, at *3 (noting that *amicus* briefs are typically allowed "when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide") (citation omitted).

utilities who provide services in overlapping territory to certain customers outside the city limits of Mobile, Alabama, but within the boundaries of Mobile County, Alabama.  The relevant facts are, with few exceptions, not in dispute, so much so that it would have behooved the parties, streamlined the summary judgment process, and obviated the need for plaintiff's sizeable evidentiary submission had they submitted their Rule 56 motions on stipulated facts, given the paucity of material factual disagreements between them.[2]

Plaintiff, Mobile County Water, Sewer and Fire Protection Authority ("MoCo"),[3] is a rural water authority, organized pursuant to Ala. Code §§ 11-88-1 *et seq.*  It is authorized to sell and does sell treated water to customers within MoCo's service area.  (Doc. 85, at 13.)  Defendant, Mobile Area Water and Sewer System ("MAWSS"),[4] is formally organized as a Board of Water and Sewer Commissioners pursuant to Ala. Code §§ 11-50-340 *et seq.*  The parties agree that MAWSS sells treated water and centralized sewer service to customers both within the city limits of Mobile, Alabama, as well as outside the city limits of Mobile, including areas within MoCo's service territory.  (Doc. 85, at 12-13.)  Thus, it is quite clear (and free from

---

[2]        Plaintiff stresses that this is a "bell weather [*sic*] case" that "has received national attention" and that "touches all Rural Water Authorities in Alabama."  (Doc. 82, at 1, 5 & n.6.)  Such statements are neither relevant nor helpful.  It goes without saying that every case filed in this District Court is important.  Moreover, our judicial system's common-law framework implies that while rulings at the district court level are not generally binding on non-parties, they may well constitute persuasive authority in other disputes in other courts.  That is no more or less true here than it would be in any other case pending before the undersigned.  The Court categorically rejects any suggestion that special treatment or a different approach to the summary judgment analysis is warranted in this case because of the importance, novelty or general interest of its subject matter.  The stakes are high in every lawsuit filed in this District Court, and this case is certainly not unique in that regard.

[3]        In previous rulings in this case, the Court has used the unwieldy acronym MCWSFPA to designate plaintiff.  To improve readability at no expense to clarity, plaintiff's alternate shorthand of "MoCo" will be employed in this Order.

[4]        In its summary judgment briefing, defendant asserts that plaintiff has identified it improperly and that its correct name is "Board of Water and Sewer Commissioners of the City of Mobile, doing business as the Mobile Area Water and Sewer System."  (Doc. 37, Exh. 1 at 1 n.1; Doc. 85, at 1, n.1.)  Be that as it may, there is no dispute that MAWSS is organized as a Board of Water and Sewer Commissioners under Alabama law; therefore, the summary judgment analysis proceeds in recognition of that designation.

debate) that MAWSS and MoCo are presently selling treated water service in an overlapping geographic area, such that at some level they are vying for the same customers with regard to treated water service.  The parties are likewise in full agreement that MAWSS is the sole seller of centralized sewer service in MoCo's service area.  (Doc. 85, at 12.)

The genesis of this lawsuit lies in MAWSS's practice of requiring new customers to accept MAWSS's treated water, should MAWSS decide to supply it, as a condition of receiving MAWSS sewer service.  To be clear, there is no dispute that MAWSS in fact engages in such a practice.  MAWSS does not shy away from this fact, by either denying or downplaying it, but instead readily admits it.  In particular, MAWSS freely concedes in its briefs that "MAWSS requires new sewer customers to accept water service from MAWSS if such service is available" and that "MAWSS requires new customers to accept MAWSS water service, if it is made available, if said new customer wishes to receive MAWSS sewer service."  (Doc. 37, Exh. 1 at 2; doc. 85, at 11.)[5]  This is not a case, then, in which there are factual issues as to whether the challenged practice exists.  Everyone agrees that MAWSS has adopted such a practice.[6]  The only question is its legality.

> **B.     Claims Joined in this Proceeding.**

In evaluating the lawfulness of MAWSS's "all-or-nothing" policy of supplying sewer and water services in MoCo's service area, the Court is of course constrained by the specific theories of liability interposed by plaintiff; therefore, the framing of the issues in the pleadings is of critical importance to the summary judgment analysis.  The Amended Complaint unambiguously

---

[5]     In that regard, MAWSS's planning and engineering manager, Dwight McGough, testified that if a new sewer customer "did not connect to our water that was available, then we would not accept them as a [sewer] customer."  (McGough Dep., at 78.)  Likewise, MAWSS's director, Malcolm Steeves, testified that if MAWSS customers "are using our sewer service, they need to use our water service. ... So if they are and they decide not to for some reason or another, then that would be a problem.  They'd need to get sewer service some other way."  (Steeves Dep., at 102.)  Thus, if an existing MAWSS sewer customer wanted to disconnect from MAWSS water service, defendant's policy would be to terminate sewer service to that customer.  (*Id.* at 102-03.)

[6]     In light of the parties' unanimity on this point, the Court will not belabor it by reciting the considerable record evidence marshaled by MoCo to support the existence of that practice, either as a general proposition or in specific instances.

reflects that MoCo has postured this action exclusively in terms of antitrust violations.  Although the Amended Complaint is not organized by specific causes of action, the sum total of the legal grounds on which MoCo seeks relief against MAWSS in this action are set forth in that filing as follows:

> "21.    MAWSS has accordingly conditioned the purchase of sewer service (the tied product) in the affected area to the purchase of water service (the tying product) also from MAWSS.  Since MAWSS has market power in the provision of sewer service in the affected area, and a substantial volume of commerce in the provision of water service has been affected by the policy and practices here alleged, these tying arrangements are per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. sec. 1.
>
> "22.    MAWSS' conditioning of the purchase of sewer service (the tied product) in the affected area to the purchase of water service (the tying product) also from MAWSS, where MAWSS has market power in the provision of sewer service in the affected area and a substantial volume of commerce in the provision of water service has been affected by the policy and practices here alleged, also unreasonably restrains trade in violation of Section 1 of the Sherman Act, 15 U.S.C. sec. 1.
>
> "23.    Through the policy and practices alleged, MAWSS has abused its market power in supplying sewer services in the affected area to gain a competitive advantage and foreclose competition in the supply of water services in the affected area, thereby monopolizing and attempting to monopolize trade and commerce in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.
>
> "24.    In addition, through the policy and practices alleged, MAWSS has abused its market power in supplying sewer services in the affected area to gain a competitive advantage and foreclose competition in the supply of water services in the affected area, thereby monopolizing and attempting to monopolize trade and commerce in violation of Code of Alabama (1970), § 6-5-60(a)."

(Amended Complaint (doc. 6), ¶¶ 21-24.)

Simply stated, then, MoCo brought this action contending that MAWSS's "all-or-nothing" bundling of water services with sewer services in MoCo's service area constitutes an

unlawful tying arrangement in violation of federal and state antitrust laws.[7]  The gravamen of MoCo's antitrust claims is that MAWSS is leveraging its dominance in the centralized sewer services market to coerce its sewer customers to purchase water service from it, rather than from competitors such as MoCo.  MoCo seeks a permanent injunction "restraining MAWSS from requiring any consumer of water to purchase water service from MAWSS as a condition of receiving sewer service"; restraining MAWSS from retaliating against any customer for purchasing water elsewhere; and requiring MAWSS to notify potential customers of their right to purchase water elsewhere.  (Doc. 6, at 8.)[8]  No other claim or cause of action has been joined by MoCo in this action.[9]

---

[7]      As a general proposition, there is no question that tying arrangements violate the Sherman Act.  *See, e.g., Eastman Kodak Co v. Image Technical Services, Inc.*, 504 U.S. 451, 461-62, 112 S.Ct. 2072 (1992) (defining tying arrangement as an agreement by seller to sell one product only on condition that buyer also purchase a different product, and explaining that such an arrangement violates the Sherman Act if the seller has appreciable economic power in the tying product market and if the arrangement affects substantial volume of commerce in tied market); *Tic-X-Press, Inc. v. Omni Promotions Co. of Georgia*, 815 F.2d 1407, 1414 (11th Cir. 1987) (recognizing that tying arrangements were long ago classified as *per se* anticompetitive practices prohibited by the Sherman Act).  Contrary to the labels used in the Amended Complaint, it is evident that sewer service is the tying product and water service is the tied product in this case.

[8]      MoCo also requested entry of a temporary restraining order and preliminary injunction against MAWSS.  Those motions were denied by Order entered on October 29, 2007.  *See Mobile County Water, Sewer and Fire Protection Authority, Inc. v. Mobile Area Water and Sewer System, Inc.*, 2007 WL 3208587 (S.D. Ala. Oct. 29, 2007).  The cross-motions for summary judgment presented at this time are in substantial part a rerun of the arguments raised and decided in connection with the "likelihood of success on the merits" prong of MoCo's failed requests for emergency and preliminary injunctive relief.

[9]      Significantly, this case is not the only pending litigation between MoCo and MAWSS.  Indeed, in August 2005 MoCo sued MAWSS in the Circuit Court of Mobile County, Alabama on the following bases: (a) that MAWSS's provision of treated water services in MoCo's service area violates the so-called anti-duplication statute found at Ala. Code § 11-50-1.1; (b) that MAWSS's encroachment in MoCo's service area breaches MAWSS's obligations under a settlement agreement entered into between the parties in 1987; (c) that MAWSS is trespassing in MoCo's service area; and (d) claims for declaratory, injunctive and monetary relief.  The Court understands that this state-court action, including specifically MoCo's claim against MAWSS under Ala. Code § 11-50-1.1, remains pending at this time.  The legally distinct claims joined in the state-court proceedings are not before this Court and will not be decided

The parties have now filed cross-motions for summary judgment as to MAWSS's liability to MoCo under federal and state antitrust provisions.[10]

## II.     Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the

---

herein. In August 2007, this Court denied MAWSS's motion to stay this federal action pursuant to *Colorado River* abstention principles (*see* doc. 17); therefore, parallel litigation has proceeded between the same parties in federal and state court, albeit alleging different theories and claims for relief, for more than a year. In declining to enter a stay, this Court opined as follows: "[i]rrespective of how the ... § 11-50-1.1 claims are resolved in Mobile County Circuit Court, the antitrust causes of action joined in this action will remain outstanding." *Mobile County Water, Sewer and Fire Protection Authority, Inc. v. Mobile Area Water and Sewer System, Inc.*, 2007 WL 2460754, *4 (S.D. Ala. Aug. 27, 2007). The Court also noted that there was no indication "that a decision on the State Court Action claims concerning whether MAWSS is exceeding its contractual and statutory rights by encroaching on [MoCo] territory will decide or obviate the need to decide whether MAWSS is engaging in unlawful 'tying' practices under the Sherman Act." *Id.*

[10]     The sequencing of these motions is unfortunate. Defendant's Motion for Summary Judgment (doc. 37) was filed and fully briefed long before Plaintiff's Motion for Summary Judgment (doc. 81) was submitted. Nonetheless, the parties (and plaintiff, in particular) utilized this second motion to rebrief, reargue and reiterate the same issues that had already been fully presented in connection with Defendant's Motion for Summary Judgment, as well as to raise previously omitted arguments that could and should have been presented in those earlier rounds of briefing. The net effect is that plaintiff has parlayed its cross-motion for summary judgment into a second bite at the apple concerning legal issues previously briefed in full and taken under submission in the context of Defendant's Motion for Summary Judgment.

truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11ᵗʰ Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11ᵗʰ Cir. 1987) (citation omitted).

"The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment." *Godard v. Alabama Pilot, Inc.*, 485 F. Supp.2d 1284, 1291 (S.D. Ala. 2007); *see also May v. A Parcel of Land*, 458 F. Supp.2d 1324, 1333 (S.D. Ala. 2006) (same). Indeed, the Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11ᵗʰ Cir. 1984) (citation omitted); *see also Wermager v. Cormorant Tp. Bd.*, 716 F.2d 1211, 1214 (8ᵗʰ Cir. 1983) ("the filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits").  Nonetheless, "cross-motions may be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts." *Godard*, 485 F. Supp.2d at 1291; *see also May*, 458 F. Supp.2d at 1333.  That is precisely the case here, as the parties appear to be in agreement that the material facts are undisputed and that certain narrow legal issues are dispositive of the claims joined herein.

**III.    Analysis.**

      **A.    *State Action Immunity.***[11]

---

[11]    Plaintiff peppers its briefs with inflammatory allegations that MAWSS's conduct is "hugely wasteful" and amounts to "great waste," that a water pipeline laid by MAWSS constitutes "an act of extraordinary aggression," that defendant is motivated by "greed or a thirst for power," that customers are victimized by "the extraordinary greed of MAWSS," that MAWSS's conduct is "unnecessarily wasteful and destructive," and the like.  (Doc. 82, at 4, 5, 12; doc. 86, at 6.)  Whether defendant's activities are wasteful, whether a water pipeline laid by defendant amounts to an attack on plaintiff, whether defendant is greedy, and the like do not appear relevant to the immunity analysis.  Rather, these statements amount to little more than name-calling designed to bias the Court against defendant.  Such vituperative characterizations concerning collateral matters will be disregarded, inasmuch as they do not assist the Court in

In its Answer to the First Amended Complaint (doc. 11), MAWSS stated as its Eighth Affirmative Defense the following: "This Defendant affirmatively pleads State Action Immunity." (Doc. 11, at 5.) The applicability of that defense lies at the heart of the parties' dueling Motions for Summary Judgment.[12]

"Under the state action immunity doctrine ..., states are immune from federal antitrust law for their actions as sovereign." *Crosby v. Hospital Authority of Valdosta and Lowndes County*, 93 F.3d 1515, 1521 (11th Cir. 1996). This protection is not confined to states, but has been extended to municipalities and instrumentalities of states, albeit under a different legal test. *See id.* (explaining that state action immunity does not apply directly to a state's political subdivisions because they are not themselves sovereign, such that "actions by the State and actions by municipalities are evaluated under different standards"); *see also Marshall v. Planz*, 13 F. Supp.2d 1231, 1233 (M.D. Ala. 1998) (recognizing that state action immunity "may be invoked not only by states themselves, but also by states' political subdivisions, including municipal corporations"). The Eleventh Circuit has explained that "political subdivisions such as municipalities are immune from antitrust liability if their anticompetitive acts follow a clearly articulated and affirmatively expressed state policy." *Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1296 (11th Cir. 1998) (citation omitted); *see also Avalon Carriage Service Inc. v. City of St. Augustine, FL*, 417 F. Supp.2d 1279, 1288 (M.D. Fla. 2006) ("before a municipality will be entitled to the protection of the state

---

resolving the cross-motions for summary judgment.

[12]     Indeed, MoCo recognizes the centrality of this issue by stating "[t]he overarching premise (albeit false) of MAWSS's Motion for Summary Judgment is that MAWSS is entitled to 'state action immunity' for its illegal tying." (Doc. 47, at 1.) That is not to say, however, that state action immunity is the only legal basis touted by defendant for Rule 56 relief. To the contrary, defendant contends that it is also entitled to judgment as a matter of law because plaintiff has failed to establish the "economic coercion" element of an antitrust tying claim, and that plaintiff's summary judgment motion should be denied because it has failed to make a sufficient showing under the "two separate products" element. *See generally Thompson v. Metropolitan Multi-List, Inc.*, 934 F.2d 1566, 1574 (11th Cir. 1991) (listing the basic elements of a *per se* tying claim which a plaintiff must satisfy to avoid having its tying claim analyzed under the rule of reason). The Court need not reach these subsidiary questions in order to resolve the cross-motions for summary judgment.

action exemption from the antitrust laws, it must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy") (citation omitted).  This "clearly articulated state policy" test applies here.[13]

    "To show the existence of a state policy displacing competition, the municipality is not required to point to a specific, detailed legislative authorization."  *Bolt v. Halifax Hosp. Medical Center*, 980 F.2d 1381, 1385 (11th Cir. 1993) (citations and internal quotations omitted); *see also Sproul v. City of Wooster*, 840 F.2d 1267, 1269 (6th Cir. 1988) ("Explicit legislative authorization for anticompetitive acts is not necessary: it is sufficient that the state bestows broad regulatory authority from which anticompetitive effects would logically result."); *In re Jet 1 Center, Inc.*, 322 B.R. 182, 195 (Bankr. M.D. Fla. 2005) ("it is not necessary that legislature expressly state in the statute or in its legislative history that legislature intended the delegated action to have anticompetitive effects," inasmuch as "no legislature can be expected to catalog all of the anticipated effects of a statute of this kind") (citation omitted).  Rather, "the 'clear articulation' test can be satisfied by showing that the legislation, pursuant to which the municipality is acting, contemplates or foresees anticompetitive conduct as a result."  *Bolt*, 980 F.2d at 1386.  All that is required is that "the anticompetitive conduct be a foreseeable result of the powers granted to the political subdivision," such that immunity attaches if said conduct is "reasonably anticipated, rather than the inevitable, ordinary, or routine outcome of a statute."  *Crosby*, 93 F.3d at 1532

---

        [13]     Although the applicable standard for state action immunity differs depending on whether the defendant is a state, a political subdivision, or a private actor, MAWSS plainly fits within the second category.  It has been recognized in this Circuit that the "political subdivision" iteration of the state action immunity standard encompasses entities such as hospital and transit authorities, state bar organizations, and rural electric cooperatives, based on "the government-like attributes of the defendant entity" and the presence of indicia demonstrating that "the nexus between the State and the entity is sufficiently strong that there is little real danger that the entity is involved in a *private* anticompetitive arrangement."  *Bankers*, 137 F.3d at 1296-97.  MAWSS's organizing statute provides that it "shall be deemed to be a public agency or instrumentality exercising public and governmental functions to provide for the public health and welfare."  Ala. Code § 11-50-343(a).  As such, any suggestion that MAWSS does not qualify as a political subdivision for state action immunity purposes would appear doomed.  At any rate, MoCo does not challenge MAWSS's status as a political subdivision, nor does it contest the propriety of the "clearly expressed state policy" yardstick for the immunity defense.  (*See* doc. 47, at 10 (specifically agreeing that MAWSS is a state actor and an agency of the City of Mobile, and acknowledging that the "clearly articulated state policy" standard governs).)

-9-

(citation omitted).[14]  Simply stated, then, MAWSS is entitled to state action immunity from MoCo's antitrust claims if its conduct was pursuant to a clearly articulated state policy, which requires a showing that "the action is *both* authorized by statute *and* its anticompetitive effect is an intended (meaning foreseeable) result of this authorization."  *Bankers*, 137 F.3d at 1298. Both elements are satisfied here.

The Alabama legislature has unambiguously declared that boards of water and sewer commissioners (such as MAWSS) are authorized and empowered to combine water and sewer systems for purposes of operations, financing and billing.  For example, the Alabama legislature expressly authorized such boards "[t]o combine the water system and the sewer system as a single system for the purpose of operation and financing."  Ala. Code § 11-50-343(a)(7). Elsewhere, the legislature reiterated that "[t]he board may combine any water system and sewer system owned and operated by it" and provided that a board "may provide a single schedule of rates, fees and charges for the services and facilities furnished by such combined system."  Ala. Code § 11-50-351(e).  The legislature also conferred extremely broad discretion on the board to implement its authority to combine its water and sewer systems.  Indeed, the board received an open-ended delegation of authority "[t]o exercise jurisdiction, control and supervision over any water system or sewer system owned, operated or maintained by the board and to make and enforce such rules and regulations for the maintenance and operation of any such system as may, in the judgment of the board, be necessary or desirable for the efficient operation of such system and for accomplishing the purposes of this article."  Ala. Code § 11-50-343(a)(9).[15]  If that grant of authority were not sufficiently expansive already to encompass MAWSS's implementation of an all-or-nothing policy, the legislative intent is further amplified by the provision that "[t]his

---

[14]    That principle is not without limits, however.  In accordance with *Community Communications Co. v. City of Boulder, Colo.*, 455 U.S. 40, 54-56, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), "a general grant of authority to govern local affairs is insufficient to constitute a clear articulation of state policy because the State's position is neutral with respect to the city's conduct."  *Auton v. Dade City, Florida*, 783 F.2d 1009, 1010 (11th Cir. 1986).

[15]    The breadth of this grant of authority is reinforced by another subsection of the same statute, which authorizes boards "[t]o do all acts and things necessary or convenient to carry out the powers expressly granted in this article."  Ala. Code § 11-50-343(a)(13).

article, being necessary for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes thereof." Ala. Code § 11-50-357.

Reviewing all of these statutory provisions in the aggregate, the Court concludes that MAWSS's enactment of an all-or-nothing policy was authorized by the Alabama legislature. To be sure, MoCo is correct that the relevant statutes do not expressly indicate that MAWSS may condition the sale of sewer services to a customer on that customer's purchase of its water services. But that is not the proper test. *See Bolt*, 980 F.2d at 1385 ("the municipality is not required to point to a specific, detailed legislative authorization" to establish state action immunity defense). The Alabama legislature explicitly stated (a) that MAWSS was empowered to combine its water services and sewer services for purposes of operations, financing and fees, (b) that MAWSS was empowered to make and enforce any rules and regulations for the maintenance and operation of its combined water and sewer systems that MAWSS deemed necessary or desirable for the efficient operation of such systems; (c) that MAWSS was empowered to take all actions necessary or convenient to carry out its powers; and (d) that these grants of authority to MAWSS should be liberally construed. In the opinion of this Court, no reasonable reading of Chapter 50, Article 10 of Title 11 of the Alabama Code could yield a conclusion that MAWSS lacked statutory authorization to enact and adhere to the all-or-nothing policy on which MoCo's antitrust allegations are founded.[16]

Moreover, the Court finds that the foreseeability element is also satisfied. It is clear from the statute that the Alabama "legislature contemplated municipalities would engage in

---

[16] Plaintiff's arguments to the contrary are without merit. For example, MoCo asserts that the statutory authorization to combine water and sewer systems is limited to "operation and financing" matters, which excludes combining the systems for purposes of the all-or-nothing policy at issue here. (Doc. 47, at 15.) The Court cannot agree. "Operation" is a broad term. The legislative framework clearly allows MAWSS to combine the operations of its water and sewer systems and to enact any rules and regulations that are necessary or desirable for efficient operations of those systems. The bundled sale of water and sewer services to its customers is a MAWSS policy within the heartland of that broad statutory authorization. Plaintiff also protests that the cited Alabama code sections are silent as to whether MAWSS may enact all-or-nothing arrangements and do not specifically endorse the all-or-nothing policy. Once again, this argument presupposes a much greater degree of legislative precision than the legal standard contemplates.

anticompetitive conduct in the course of providing their citizens with a water supply." *Auton v. Dade City, Fla.*, 783 F.2d 1009, 1011 (11th Cir. 1986). Indeed, the Supreme Court, examining Wisconsin statutes relating to municipal sewage systems, declared that "it is sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served. We think it is clear that anticompetitive effects logically would result from this broad authority to regulate." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 42, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985). Similarly, the relevant Alabama statutes authorized MAWSS (a) "[t]o acquire, ... construct, reconstruct, improve, extend, operate and maintain any water system or part thereof or any sewer system or part thereof or any combination thereof within or without or partly within and partly without the corporate limits of the ... city," Ala. Code § 11-50-343(a)(5); (b) "[t]o combine the water system and the sewer system as a single system for the purpose of operation and financing," § 11-50-343(a)(7); and (c) "to make and enforce such rules and regulations for the maintenance and operation of any such system as may, in the judgment of the board, be necessary or desirable," § 11-50-343(a)(9). If the Wisconsin scheme in *Town of Hallie* was sufficient to evidence a clearly articulated state policy to displace competition with regulation in the area of municipal provision of sewage services, from which the tying arrangement complained of was logically foreseeable, then surely the Alabama scheme summarized above establishes a clearly articulated state policy to displace competition with regulation in the area of boards of water and sewer commissioners' provision of water and sewer services, from which MAWSS's alleged tying policies were logically foreseeable. Simply stated, Alabama's grant of authority to MAWSS is at least as clear as Wisconsin's in *Town of Hallie*; therefore, because the municipality in *Town of Hallie* was entitled to state action immunity, the same is true of MAWSS here.

A trio of Eleventh Circuit decisions concerning analogous water statutes in Florida and Georgia bolster this conclusion. *See McCallum v. City of Athens, Ga.*, 976 F.2d 649 (11th Cir. 1992); *Falls Chase Special Taxing District v. City of Tallahassee*, 788 F.2d 711 (11th Cir. 1986); *Auton v. Dade City, Fla.*, 783 F.2d 1009 (11th Cir. 1986). In all three cases, the courts examined state statutes that authorized cities to create and construct municipal water supplies. *McCallum*, 976 F.2d at 654; *Falls Chase*, 788 F.2d at 713; *Auton*, 783 F.2d at 1010. Each of those statutory frameworks granted the municipality the power of eminent domain. *McCallum*, 976 F.2d at 654;

*Falls Chase*, 788 F.2d at 713; *Auton*, 783 F.2d at 1011.  Each of those statutory provisions also authorized municipalities to fix water rates.  *McCallum*, 976 F.2d at 654; *Falls Chase*, 788 F.2d at 714; *Auton*, 783 F.2d at 1011.  Finally, both Florida and Georgia barred municipalities from constructing a water system if a similar system already existed in immediately adjacent territory. *McCallum*, 976 F.2d at 654-55; *Falls Chase*, 788 F.2d at 713; *Auton*, 783 F.2d at 1010.  Upon examining these features of the Georgia statute, the Eleventh Circuit opined that state action immunity applied because "[t]he clear implication is that these state policies oppose competition ... [and] contemplate anticompetitive effects."  *McCallum*, 976 F.2d at 655.  As for the Florida statute, the Eleventh Circuit's conclusion was that "[t]he cumulative effect of these statutes is to grant Florida municipalities broad power to provide water to their inhabitants" and "[i]t is clear that anticompetitive effects logically would result from this broad authority to regulate."  *Auton*, 783 F.2d at 1011 (citation omitted); *see also Falls Chase*, 788 F.2d at 713-14 (similar).  The Alabama enactments at issue in this case are indistinguishable in any material respect from those deemed in *McCallum*, *Falls Chase* and *Auton* to have foreseeable anticompetitive effects giving rise to state action immunity.[17]

_____

[17]       In its Reply Brief (doc. 86), the last of several briefs filed by MoCo on the issue of state action immunity, plaintiff argues for the first time that state action immunity is unavailable here because the antitrust claims brought against a political subdivision are being brought by a political subdivision, not a private individual.  Plaintiff fails to identify any authority supporting the proposition that the availability of state action immunity depends on the identity of the entity bringing the antitrust claims.  Nor is there any basis in logic or common sense why state action immunity should turn on the status of the plaintiff, such that municipalities who would enjoy such immunity if private actors sue them in antitrust would be stripped of such immunity if another municipality is the plaintiff.  Accordingly, even if this argument were properly raised in MoCo's reply brief at the conclusion of multiple rounds of briefing, the Court declines plaintiff's invitation to devise a novel exception to the well-established state action immunity doctrine.  If, as plaintiff suggests, there is a paucity of authority awarding state action immunity when a regulated entity is being sued by another regulated entity under antitrust law, it does not follow that there is an analytical impediment to application of state action immunity in those circumstances.  Rather, a far more likely explanation for the dearth of such authority is that municipalities rarely sue each other under the Sherman Act.  Government-on-government antitrust lawsuits are aberrational.  Besides, plaintiff's contention that all of the relevant caselaw concerning this immunity involves private actors suing regulated actors is simply false.  *See, e.g., Town of Hallie*, 471 U.S. 34 (city entitled to state action immunity from antitrust liability where plaintiffs were four Wisconsin townships);

At the risk of repetition, the Court emphasizes that MAWSS was expressly authorized by the Alabama legislature to operate municipal water and sewer systems, to combine those systems for operational purposes, to implement any rules and regulations pertaining to the operations of those systems that MAWSS deemed desirable for their efficient operation, and to do all acts and things necessary or convenient to carry out those powers, with the additional overlay that these provisions must be liberally construed.  Viewed collectively, Alabama's statutory scheme unquestionably authorized MAWSS to require its sewer customers to purchase water from it if they wanted to received MAWSS sewer service, and the anticompetitive effects of MAWSS's actions were reasonably foreseeable from the authority granted it by the legislature.  To find otherwise would be to disregard the teachings of *Town of Hallie*, *McCallum*, *Falls Chase* and *Auton*.[18]

---

*Falls Chase*, 788 F.2d at 711-714 (city entitled to state action immunity from antitrust liability where plaintiff was a local unit of special government created by state law to perform prescribed specialized functions within limited boundaries).  Plaintiff's insistence that the Wisconsin townships in *Town of Hallie* and the local unit of special government in *Falls Chase* are "private actors" is misleading and inaccurate.  And MoCo's desperate argument that to cloak MAWSS with immunity here would somehow create a "pecking order" among Alabama regulated utilities is meritless.  It does not create a pecking order to recognize that the Alabama legislature intended anticompetitive effects in the market for service of water and sewer supplies.  It does not create a pecking order for the Court to hold that MoCo has no remedy in antitrust law, particularly where it is pursuing potentially viable remedies under state law in state court at this time.  Ironically, if anyone is requesting a pecking order here, it is MoCo, with its insistence that federal antitrust law should operate to forbid MAWSS from undertaking any water service activities in MoCo's territory, thereby affording MoCo preeminence and monopoly power in its service area.

[18]     Also instructive is *Kern-Tulare Water Dist. v. City of Bakersfield*, 828 F.2d 514 (9th Cir. 1987), wherein Sherman Act claims were brought against a California municipality for conditioning its sale of water to a water district on that water district not re-selling the water.  Nothing in the California statutes expressly conferred authority on the municipality to impose a no-resale condition on water sales; however, the Ninth Circuit concluded that state action immunity attached nonetheless because "[t]he restriction of transfer is foreseeable within the authority of the city to contract for, acquire and hold water rights, to furnish itself and its inhabitants with water, and to sell, lease, exchange, or transfer surplus water."  *Id.* at 519-20.  Surely, if a municipality's attachment of "no-resale" conditions on water transfers was an anticompetitive effect that was reasonably foreseeable from the general grant of authority to the municipality to buy and sell water, then MAWSS's requirement that its sewer customers also

In short, the Court holds that, as a matter of law, MAWSS's challenged conduct follows a clearly articulated and affirmatively expressed state policy.  Defendant's practice of conditioning sewer service on its customers' purchase of defendant's water service was authorized by the Alabama legislature and its anticompetitive effects are a foreseeable result of this authorization. Therefore, MAWSS is entitled to state action immunity with respect to MoCo's federal antitrust claims.[19]

       **B.**     ***The Non-Impact of Alabama Code § 11-50-1.1.***

In arguing that the "clearly articulated state policy" requirement is not satisfied here, MoCo spends little time parsing Chapter 50, Article 10 of Title 11 of the Alabama Code, as the Court has done, but instead devotes the bulk of its argument to discussion of Ala. Code § 11-50-1.1.  That statute provides, in relevant part, that "[m]unicipalities are hereby prohibited from acquiring, or duplicating any services of, any waterworks system or any part thereof, operated by a corporation or association which has been organized under ... Sections 11-88-1 through 11-88-21 ... without the consent of a majority of the members of the governing board of said corporation or association."  Ala. Code § 11-50-1.1.  MoCo submits evidence and extensive legal argument in support of the proposition that MAWSS's conduct of laying water pipes in MoCo's service territory amounts to unlawful duplication of MoCo's water services, in violation of § 11-50-1.1.

---

buy water from it was an anticompetitive effect that was authorized and reasonably foreseeable from the general grant of authority to MAWSS to combine its water and sewer systems operationally and to take any actions desired or convenient in furtherance of that combined system.  *See also Avalon Carriage*, 417 F. Supp.2d at 1289 (broad legislative enactment authorizing city to regulate carriages and wagons gave rise to state action immunity because it had foreseeable anticompetitive effects, where city capped number of horse-drawn carriage permits and awarded almost all such permits to plaintiff's competitor, even though competitor was not using most of those permits).

[19]      In light of this determination, it is unnecessary to examine defendant's alternative argument for summary judgment that, even if immunity does not attach, plaintiff's claims should still be dismissed for want of evidence of actual coercion.  (*See* doc. 37, at 7-8.)  In any event, plaintiff has come forward with substantial record evidence of coercion, so it appears unlikely that Rule 56 relief would be appropriate for defendant based on this argument, were the Court to reach it.

Plaintiff's invocation of Alabama's anti-duplication statute does not alter (and, paradoxically, actually reinforces in some respects) the state action immunity analysis set forth in Section III.A., *supra*.  As an initial matter, it bears emphasis that MoCo has asserted no causes of action sounding in § 11-50-1.1 against MAWSS in these proceedings.  To be sure, MoCo has sued MAWSS for alleged violation of § 11-50-1.1 in state court, and this Court's understanding is that the parties are actively litigating that issue in that forum.  To the extent that plaintiff intends to use its summary judgment briefs to inject a duplicative § 11-50-1.1 claim against MAWSS in these proceedings, that effort is improper.  *See Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (having proceeded through discovery without seeking to amend complaint to reflect new theory of cause of action, plaintiff "was not entitled to raise it in the midst of summary judgment"); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  Plaintiff's claims against MAWSS in this case are confined to the antitrust violations alleged in the pleadings, and this Court's analysis is therefore equally circumscribed.

If the Court understands MoCo's position correctly, its purpose in focusing its summary judgment briefs on the § 11-50-1.1 issue is to show that the Alabama legislature did not authorize MAWSS's conduct.  As mentioned *supra*, state action immunity from federal antitrust law applies to political subdivisions only when their activities are "*both* authorized by statute *and* [their] anticompetitive effect is an intended (meaning foreseeable) result of this authorization."  *Bankers*, 137 F.3d at 1298.  Thus, MoCo purports to be raising its § 11-50-1.1 argument to demonstrate that the Alabama legislature did not authorize MAWSS's activities, such that MAWSS is not protected by state action immunity.  The Court cannot agree.[20]

_____

[20]     Before reaching the merits of MoCo's argument, two other points bear mention, at least in passing.  First, MoCo's reliance on § 11-50-1.1 effectively blurs or, more accurately, obliterates the line separating its federal lawsuit from its state lawsuit.  If MoCo intended for its Sherman Act claims in this action to collapse into the § 11-50-1.1 cause of action it began pursuing against MAWSS in state court two years before it filed its Complaint in federal court, then it is difficult to conceive of why MoCo would choose to prosecute a second, redundant lawsuit in this forum.  After all, the declaratory and injunctive relief sought here would presumably be equally available in the state-court proceedings.  (*See* doc. 82, at 6 (conceding

Fundamentally, MoCo is mixing apples and oranges.  The MAWSS transgression on which MoCo's antitrust claims are based is its alleged "tying arrangement," whereby MAWSS obliges its sewer customers to purchase MAWSS treated water service as a condition to receiving MAWSS sewer service, thereby restraining trade, inhibiting competition, and leveraging its market power with respect to centralized sewer service to increases sales of its treated water service.  This is the "all-or-nothing" policy referenced in the pleadings.  The question, then, for purposes of assessing MAWSS's entitlement to state action immunity from antitrust liability is whether the Alabama legislature authorized MAWSS's all-or-nothing policy and whether the anticompetitive effects of that policy are reasonably foreseeable.  In section III.A., *supra*, the Court has already answered this question affirmatively based on review of MAWSS's organizing statutes and applicable precedents.

With its § 11-50-1.1 argument, however, MoCo would recast its antitrust claims into

---

that MoCo seeks nothing other than an injunction in this case).)  And if both the federal and the state lawsuits turn on the construction of § 11-50-1.1, then MoCo can achieve nothing in this action other than increased expense and inconvenience for the parties, as well as duplicative commitment of judicial resources in two different forums.  Second, if as MoCo now contends its Sherman Act claims rest on the § 11-50-1.1 issue, then it is troubling that this factor was not brought to the Court's attention by MoCo during the briefing of MAWSS's Motion to Stay (doc. 13), which was predicated on the existence of parallel state-court proceedings.  Upon applying the *Colorado River* factors, this Court declined to abstain pending the outcome of the state-court action, based in no small part on the Court's assessment that the legal issues in the two cases were distinct and that the state-court rulings would not affect the antitrust claims in this action. (*See* doc. 17, at 7-8.)  Had the Court been aware at that time that MoCo intended to bootstrap its Sherman Act claims on the proposition that MAWSS was in violation of § 11-50-1.1, when a separate § 11-50-1.1 claim was already pending before the Mobile County Circuit Court, the *Colorado River* analysis would have proceeded far differently.  The net result of MoCo's omission of its intentions in this regard in briefing the *Colorado River* analysis was that this Court in ruling on the Motion to Stay was incorrectly led to believe that the issues pending in the two cases were distinct and that this Court was being asked to decide only issues of federal law, not unsettled, thorny questions of Alabama statutory interpretation that were already pending before a state tribunal.  If, in fact, the § 11-50-1.1 issue were relevant to the antitrust claims presented here (the Court finds herein that it is not), then the Court would not embark on a quest to resolve unsettled questions of Alabama statutory interpretation that are pending in a state-court action involving these very parties without first taking a long look at the propriety of abstention, whether on motion by defendant or *sua sponte*, given the obvious potential for interference with the state-court proceedings and inconsistent rulings arising from the significant overlap of legal issues involved.

something they are not.  If MoCo's § 11-50-1.1 argument is accepted as true, then the Alabama legislature did not authorize MAWSS to extend its water treatment service network into areas already covered by MoCo's water treatment system.  If that were correct, then MAWSS's act of encroaching on MoCo's turf would contravene Alabama law, and MoCo would prevail in the pending state-court action.  But that encroachment is not the conduct of which MoCo is complaining in this case.  Here, MoCo has specifically delineated its antitrust claim to be about MAWSS's requirement that sewer customers buy its water service, not MAWSS's presence in MoCo's service area.  Stated differently, the Sherman Act violation claimed by MoCo is a tying arrangement, not a duplication of services.[21]  As long as a clearly articulated state policy allows MAWSS to condition the sale of sewer service on customers' agreement to purchase water service from MAWSS, then state action immunity applies and the Sherman Act claims against MAWSS must be dismissed.  Section 11-50-1.1 has precisely no bearing on whether an Alabama board of water and sewer commissioners may implement all-or-nothing policies concerning sale of water and sewer services.  Therefore, that section is, quite plainly, irrelevant to the state action immunity analysis.  MoCo's argument to the contrary unhelpfully muddies the waters, and serves only to divert attention from the issues that have been properly joined in these proceedings.  MoCo must live with the claims that it has actually joined herein, not some hypothetical, unpleaded set of claims that might or might not be able to survive Rule 56 scrutiny.  MAWSS having identified a fatal legal deficiency in (or, more accurately, a valid legal defense to) MoCo's antitrust claims in this action, MoCo will not be permitted to morph those claims at the eleventh hour to remedy the defects and dodge the swing of the summary judgment axe.[22]

---

[21]     It is difficult to imagine how the mere duplication of services by competing service providers in the same geographic area -- which is the very definition of competition in the marketplace -- could possibly amount to a restraint of trade or other anticompetitive conduct that might violate the Sherman Act.  Even if it could, the point remains that MoCo has not fashioned its Sherman Act claims on this theory, and cannot rely on sleight of hand in a summary judgment brief to rewrite those claims now.

[22]     To be clear, the Court makes no findings and expresses no opinions as to whether MAWSS's conduct is violative of § 11-50-1.1.  That determination hinges on issues of Alabama statutory interpretation as well as construction of the Alabama Supreme Court's limited and potentially ambiguous guidance in *City of Wetumpka v. Central Elmore Water Authority*, 703

-18-

Moreover, plaintiff's reliance on § 11-50-1.1 is misplaced because its result-driven reasoning would lead to absurd results in an array of circumstances. Tying arrangements are generally proscribed by the Sherman Act, unless immunity applies. To accept MoCo's position, however, would be effectively to declare that MAWSS's all-or-nothing policy violates the Sherman Act when it occurs in MoCo's service territory (because of § 11-50-1.1), but not when it occurs outside the territory of MoCo or any other rural water authority (where § 11-50-1.1 would not apply).[23] So MoCo would have this Court hold that MAWSS is not entitled to immunity for anticompetitive acts in MoCo's service territory, even though MoCo's own argument shows that MAWSS would be entitled to such immunity for precisely the same anticompetitive acts performed anywhere else.[24] The Court perceives nothing in the Sherman Act or Alabama's legislative scheme that would contemplate immunizing MAWSS from antitrust liability for tying arrangements performed in certain service territories, but not for those in others.

---

So.2d 907 (Ala. 1997). Inasmuch as these questions have not been properly joined in this lawsuit, whereas they are pending before the Circuit Court of Mobile County in parallel state-court litigation, this Court will not wade into those murky waters unnecessarily. *See generally Allapattah Services, Inc. v. Exxon Corp.*, 362 F.3d 739, 755 (11th Cir. 2004) (recognizing that "questions of state law ... should presumptively be left to state tribunals"); *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing general proposition that "[s]tate courts, not federal courts, should be the final arbiters of state law").

[23]    Plaintiff admits as much, stating that MoCo "does not dispute any conduct pursuant to [MAWSS's organizing statutes] within the city limits of Mobile." (Doc. 47, at 19.)

[24]    To take the reasoning one step further, suppose the shoe were on the other foot and MoCo were attempting to reach into MAWSS's service territory to provide competing water services. Under MoCo's own reasoning, MAWSS would face no Sherman Act liability for its tying arrangements in that event because MoCo would be infringing on MAWSS's service territory (such that MAWSS would not be violating § 11-50-1.1, even though its anticompetitive behavior would be precisely the same as it is in the facts of this case), rather than the converse. Likewise, under MoCo's theory, MoCo would apparently be protected by immunity from Sherman Act liability for tying arrangements that it performed anywhere because Ala. Code § 11-50-1.1 does not apply to it. In short, to adopt MoCo's reasoning would be to draw false, unprincipled distinctions and yield bizarre, incongruent results in which antitrust liability would be predicated on mere happenstance and caprice, rather than being rooted in any systematic, consistent application of federal and state statutory authority. The Court declines to embrace such a blatantly result-driven rationale.

-19-

Finally, far from defeating MAWSS's state action immunity defense, MoCo's § 11-50-1.1 arguments actually strengthen and reinforce defendant's entitlement to immunity under that doctrine.  As interpreted by MoCo, § 11-50-1.1 is an anticompetitive statute evincing a legislative intent to curtail or, indeed, eradicate all competition between municipal boards of water and sewer commissioners, on the one hand, and rural water authorities, on the other.  For example, MoCo insists that "[n]o Alabama Code section more clearly articulates the legislature's intent to prevent direct competition (and wasteful duplication of services) between Municipal Water Boards (like MAWSS) and Rural Water Authorities (like MoCo)."  (Doc. 82, at 22.)[25] But this argument plays directly into defendant's hand as to the foreseeability prong of state action immunity.  Recall that a touchstone of state action immunity is that the anticompetitive effects of the legislature's authorization be foreseeable.  *See generally Bankers*, 137 F.3d at 1298.  By plaintiff's own admission, the legislative scheme here was established, designed and intended to "prevent direct competition" in the provision of water and sewer services.  Taking plaintiff's argument at face value, then, § 11-50-1.1 is a clear articulation of the Alabama legislature's intent to enact an anticompetitive system of water and sewer service delivery.  Thus, even if MoCo's reading of § 11-50-1.1 as a bar on competition between MAWSS and MoCo is accepted as correct, that construction bolsters the Court's determination, *supra*, that the anticompetitive effects of the legislative scheme at issue in this case were sufficiently foreseeable to warrant application of state action immunity to MAWSS's conduct.[26]  *See*

---

[25]    Similarly, plaintiff argues elsewhere that § 11-50-1.1 "prohibits competition initiated by a municipal Water Board (MAWSS) against a rural Water Authority (Mobile County Water Authority) without the permission of the rural Water Authority."  (Doc. 47, at 6-7.) Plaintiff also states that "the legislative intent is to protect [MoCo] from competition of any sort."  (*Id.* at 18.)

[26]    Another way to make the point is as follows: MoCo's antitrust causes of action in this lawsuit are rooted in the premise that MAWSS is competing with it unfairly.  Unfair competition is, at some level, the essence of an antitrust violation.  Yet, MoCo's own position is that the Alabama legislature intended to forbid competition between MAWSS and MoCo altogether.  If the legislature intended there to be no competition between MAWSS and MoCo, and if an anticompetitive legislative scheme lies at the core of the state action immunity defense, then the legislature's clear anticompetitive framework for municipal water and sewer supplies should immunize MAWSS from liability in antitrust law for anticompetitive acts with respect to

*McCallum*, 976 F.2d at 654-55 (awarding state action immunity to municipality where state enactments provide clear implication "that these state policies oppose competition among water providers within a single territory" and "contemplate anticompetitive effects in general"); *Auton*, 783 F.2d at 1010-11 (reaching conclusion, based on similar feature of Florida statute, that "the legislature recognized that municipal public works often require anticompetitive practices," such that state action immunity was proper because it was clear that anticompetitive effects logically would result from this legislative scheme).

 For all of the foregoing reasons, it is the determination of this Court that Alabama Code § 11-50-1.1 in no way undermines, alters or defeats defendant's entitlement to state action immunity from the federal antitrust claims interposed against it in this action.

 **C. The State-Law Antitrust Claim.**

 Having found that MAWSS is entitled to immunity with respect to the Sherman Act claims, the only remaining question is the fate of MoCo's state-law claim under Ala. Code § 6-5-60(a). That section creates a right of action for anyone "injured or damaged by an unlawful trust, combine or monopoly, or its effect, direct or indirect." *Id.*

 "The federal law relating to monopolization governs Alabama antitrust actions" brought under § 6-5-60. *McCluney v. Zap Professional Photography, Inc.*, 663 So.2d 922, 926 (Ala. 1995); *see also City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 555 n.8 (11th Cir. 1998) ("Under Alabama law, federal antitrust law prescribes the terms of unlawful monopolies and restraints of trade as they should ... be administered in Alabama.") (citations and internal quotations omitted); *Auton*, 783 F.2d at 1010 n.1 (noting that conduct exempt under federal antitrust law is also exempt under Florida state antitrust provisions). Moreover, it is well established that, with respect to § 6-5-60(a), "Alabama courts interpret this provision in accordance with federal antitrust law." *Marshall*, 13 F. Supp.2d at 1246 (dismissing § 6-5-60 cause of action where Sherman Act claims had also been dismissed, and for the same reasons);

---

MoCo. Once again, it is clear that MoCo is attempting to fit a square peg into a round hole by seeking to hold MAWSS liable in antitrust law for its conduct in this case. The theory simply does not fit the facts. MoCo may or may not have viable claims for relief under § 11-50-1.1, for breach of contract, and the like, but those issues are joined in the parallel state-court proceedings and are not properly before this Court.

*see also Jet 1*, 322 B.R. at 197 (observing that where state-law claims are piggybacking on Sherman Act claims, and where defendants have been found exempt from federal antitrust claims, they are also exempt from state antitrust claims).  In light of the foregoing, the Court's determination that MAWSS is entitled to state action immunity as to the federal antitrust claims applies with equal force to plaintiff's parallel state-law claims interposed pursuant to § 6-5-60.[27]

**IV.      Conclusion.**

For all of the foregoing reasons, the Court concludes that principles of state action immunity bar all of plaintiff's claims against defendant herein.  Accordingly, Defendant's Motion for Summary Judgment (doc. 37) is **granted**, Plaintiff's Motion for Summary Judgment (doc. 81) is **denied**, and the Amended Complaint is **dismissed with prejudice**.  A separate judgment will enter.

DONE and ORDERED this 23rd day of July, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[27]      Notably, the parties have not argued otherwise, and plaintiff has never suggested that its § 6-5-60 cause of action can survive summary judgment if its federal antitrust claims do not.  To the contrary, plaintiff concedes that "Alabama state antitrust analysis mimics the Federal antitrust analysis."  (Doc. 82, at 2 n.3.)  There being no discernable distinction between the federal and state antitrust claims, and the parties having identified none, the dismissal of the Sherman Act claims will likewise be fatal to plaintiff's § 6-5-60 cause of action.