**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MOBILE COUNTY WATER, SEWER AND FIRE PROTECTION AUTHORITY, INC.,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION 07-0357-WS-M** |
| **MOBILE AREA WATER AND SEWER SYSTEM, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

**ORDER**

This matter comes before the Court on Defendant's Motion for Sanctions (doc. 94).  The Motion has been briefed and is ripe for disposition.[1]

On July 23, 2008, the undersigned entered an Order (doc. 92) granting defendant's motion for summary judgment and denying plaintiff's cross-motion for summary judgment in this antitrust action brought under the Sherman Act, 15 U.S.C. §§ 1 *et seq.  See Mobile County Water, Sewer and Fire Protection Authority, Inc. v. Mobile Area Water and Sewer System, Inc.*, ---- F. Supp.2d ----, 2008 WL 2882944 (S.D. Ala. July 23, 2008).  Plaintiff's antitrust claims hinged on its contention that defendant had engaged in an unlawful, anticompetitive tying arrangement by conditioning its customers' eligibility for sewer service on their purchase of defendant's water service.  The Court found that plaintiff's antitrust claims were barred by state action immunity, which insulates political subdivisions "from antitrust liability if their anticompetitive acts follow a clearly articulated and affirmatively expressed state policy."

---

[1]      The Court recognizes that plaintiff filed a Notice of Appeal (doc. 97) from the final judgment in this case on August 20, 2008.  However, that appeal does not terminate this Court's jurisdiction to decide the Motion for Sanctions.  *See, e.g., Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999) ("It is well-settled law that the filing of a notice of appeal divests the district court of jurisdiction over a case. ... The general rule regarding divestiture of jurisdiction, however, does not apply to collateral matters not affecting the questions presented on appeal.").

*Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1296 (11th Cir. 1998) (citation omitted).  Upon careful scrutiny of the relevant Alabama statutes and binding precedent examining analogous statutory schemes, the Court concluded as a matter of law that "[d]efendant's practice of conditioning sewer service on its customers' purchase of defendant's water service was authorized by the Alabama legislature and its anticompetitive effects are a foreseeable result of this authorization," such that state action immunity applies.  *Mobile County Water*, 2008 WL 2882944, at *7.

In determining that plaintiff's claims were barred by principles of state action immunity, the Court was critical of two particular aspects of plaintiff's briefing.  First, the Court admonished plaintiff for utilizing its cross-motion for summary judgment as a platform "to rebrief, reargue and reiterate the same issues that had already been fully presented in connection with Defendant's Motion for Summary Judgment, as well as to raise previously omitted arguments that could and should have been presented in ... earlier rounds of briefing."  *Mobile County Water*, 2008 WL 2882944, at *2 n.10.  Second, the Court took plaintiff to task for focusing its summary judgment argument on the contention that Alabama Code § 11-50-1.1 (the anti-duplication statute) demonstrates that the Alabama legislature had not authorized defendant's conduct, after omitting any mention of that statute in earlier briefing on an abstention issue.  The Court pointed out that plaintiff had previously brought a pending state court action against defendant alleging violation of § 11-50-1.1, and that defendant's motion for *Colorado River* abstention in this case had been denied on the grounds that the legal issues in the two cases were distinct.  By injecting § 11-50-1.1 into this federal action at the Rule 56 stage, the Court observed, plaintiff "blurs or, more accurately, obliterates the line separating its federal lawsuit from its state lawsuit. ... Had the Court been aware [when ruling on the abstention issue] that MoCo intended to bootstrap its Sherman Act claims on the proposition that MAWSS was in violation of § 11-50-1.1, when a separate § 11-50-1.1 claim was already pending before the Mobile County Circuit Court, the *Colorado River* analysis would have proceeded far differently."  *Mobile County Water*, 2008 WL 2882944, at *7 n.20.

Defendant now seeks to parlay these aspects of the summary judgment order into an award of sanctions by requesting an order commanding plaintiff to pay defendant's reasonable attorney's fees and expenses incurred in connection with plaintiff's motion for summary

judgment and the *Colorado River* abstention motion.

As authority for its request for sanctions, defendant cites 28 U.S.C. § 1927, which provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id.* In this Circuit, the following essential requirements must be satisfied before § 1927 sanctions are permissible: (1) "the attorney must engage in unreasonable and vexatious conduct"; (2) such conduct "must be conduct that multiplies the proceedings"; and (3) "the dollar amount of the sanction must bear a financial nexus to the excess proceedings." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted). With regard to the first requirement, the law is quite clear that "something more than a lack of merit is required. ... The statute was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith." *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). This "bad faith" touchstone is satisfied "where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.*; *see also In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008) ("A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.") (citation omitted); *Amlong*, 500 F.3d at 1242 ("an attorney's conduct must be particularly egregious to warrant the imposition of sanctions – the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim"). The Eleventh Circuit has emphasized that the "bad faith" threshold for imposition of sanctions sets a "high standard" of sanctionable misconduct, as well it should. *Amlong*, 500 F.3d at 1242.[2]

_____

[2]     In view of this daunting threshold of egregious misconduct, a motion for sanctions should not be a kneejerk response to a favorable court ruling on a hotly contested legal issue. Indeed, this Court has consistently taken a dim view of motions for sanctions filed by litigants seeking to punish their adversaries based on acrimony between counsel, to vindicate counsel's position of disagreement with opposing counsel, or to extract some strategic leverage. *See, e.g., Wood v. B.C. Daniels, Inc.*, 2008 WL 2163921, *3 (S.D. Ala. May 21, 2008) (denying motion for sanctions where petitioners unsuccessfully gambled that respondent would waive

Defendant's Motion for Sanctions fails to identify any conduct by plaintiff's counsel that would satisfy the "bad faith" threshold under Eleventh Circuit law.  Certainly, plaintiff's counsel acted well within the boundaries of reason by filing a Rule 56 motion; after all, the parties agreed that there were no factual disputes remaining for trial, so the filing of cross-motions for summary judgment was procedurally proper.  It is true that plaintiff took unwarranted liberties in its summary judgment briefs to seek a second bite at the apple at issues on which briefing had previously concluded.  But that conduct, while inefficient and unhelpful, does not amount to bad faith.  Many legal professionals appear hardwired to say the same things over and over again.  If courts were to impose sanctions every time a lawyer submitted a redundant argument or brief, precious few members of the bar would emerge unscathed.[3]  The Eleventh Circuit's "bad faith" hurdle is much higher.  Besides, to the extent that defendant incurred additional attorney's fees responding to redundancies in plaintiff's Rule 56 brief, defendant is not without culpability.  Indeed, defendant could have filed a motion to strike portions of plaintiff's summary judgment brief that inappropriately reopened briefing on defendant's already-ripe motion for summary judgment.  It elected not to do so, but instead opted to file a responsive brief that in various respects reiterated arguments previously made.  Thus, defendant's strategic decision to respond

---

limitations defense, and where there was no record basis for concluding that underlying motion was filed in bad faith for purpose of harassing respondent or driving up its litigation costs); *Baucom v. Sisco Stevedoring, LLC*, 2008 WL 313174, *6 (S.D. Ala. Feb. 1, 2008) (denying plaintiff's motion for sanctions where defendant's legal position, while unavailing, was not unreasonable); *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 538 (S.D. Ala. 2007) (motion for sanctions "is not a weapon for intimidating or browbeating opposing counsel to refrain from filing a pleading that a lawyer disagrees with."); *Escambia County Bd. of Educ. v. Benton*, 358 F. Supp.2d 1112, 1119 n.13 (S.D. Ala. 2005) ("Although the Court disagrees with the Board's position in its Motion to Remand, the Board's arguments are not so far beyond the borders of reason as to warrant imposition of sanctions for having articulated them.").

[3]       The same goes for defendant's objection that plaintiff "appears to have been intent upon reaching this Court's page limitation on every one of its submissions, apparently without regard to whether it needed the excess verbiage to clearly state its position, and often without attempting to supply authority or argument."  (Doc. 94, at 3 n.3.)  If excessive verbosity and inadequate citations were themselves sanctionable acts, scarcely a day would go by without this Court imposing sanctions on an attorney appearing before it.  Much, much more is required under § 1927.

on the merits, rather than moving to strike portions of plaintiff's brief, played directly into any elevated fees that it accrued.

Nor does plaintiff's omission of § 11-50-1.1 from its briefing on the *Colorado River* abstention issue amount to bad faith.  Plaintiff had a good-faith basis for opposing abstention, to-wit:  that the Sherman Act claims brought in this action could not have been raised in the state court proceedings and could not be decided by the state court.  While the Court faulted plaintiff for not acknowledging the centrality of § 11-50-1.1 to its position on the immunity defense in the context of the motion for abstention (thereby leading the Court to believe that there was no overlap in legal issues in the two cases, when in fact § 11-50-1.1 was of potential importance to both actions), that omission did not render plaintiff's position on the abstention issue frivolous, nor did it disrupt, delay or hamper these proceedings.  The Court's summary judgment order specifically noted that the legal overlap of § 11-50-1.1 between the two cases would come into play only if that statute were relevant to plaintiff's claims presented here; however, the July 23 Order explained at length why § 11-50-1.1 is not relevant to the antitrust claims as framed by plaintiff.  *Mobile County Water*, 2008 WL 2882944, at *7-10.  This is not the stuff of bad faith. Even if it were, plaintiff's conduct did not multiply the proceedings because, as the July 23 Order explained, the motion for abstention would have been resolved the same way (albeit using a different analysis) even if plaintiff had acknowledged its reliance on § 11-50-1.1 at that time.

Defendant's remaining arguments in support of its motion for sanctions may be dispatched quickly.  First, defendant protests that plaintiff "made section 11-50-1.1 the *sine qua non* of its legal case - absent any legal authority or principled argument supporting it."  (Doc. 94, at 5.)  It is true that plaintiff relied heavily on § 11-50-1.1 to contest the application of state action immunity here.  It is also true that this Court disagreed with plaintiff's position.  But those circumstances do not render plaintiff's § 11-50-1.1 arguments frivolous or prove that they were interposed in bad faith.  *See generally Escambia County Bd. of Educ. v. Benton*, 358 F. Supp.2d 1112, 1119 n.13 (S.D. Ala. 2005) (losing party's articulation of arguments rejected by court does not, without more, warrant sanctions).  The Court is of the opinion that, while plaintiff's § 11-50-1.1 arguments were not meritorious, they were neither frivolous nor raised for an improper purpose.  Sanctions are not appropriate on that basis.  Second, defendant objects to plaintiff's inflammatory comments, such as characterizing defendant's act of laying a pipeline as "an act of

extraordinary aggression" by an entity driven by "greed or a thirst for power."  The July 23 Order chastised plaintiff for engaging in "name-calling designed to bias the Court against defendant."  *Mobile County*, 2008 WL 2882944, at *3 n.11.  In the undersigned's view, that rebuke in a published order is sufficient to address plaintiff's conduct, and no formal sanction (especially an award of attorney's fees) is warranted on that basis, particularly given that those verbal attacks did not have the effect of multiplying the proceedings.  Third, defendant asserts that sanctions are warranted based on plaintiff's unsuccessful argument that no court had ever applied state action immunity in circumstances similar to these.  Plaintiff's argument was mistaken, in the judgment of this Court, but it was not undertaken in bad faith, so as to justify imposition of sanctions.[4]

---

[4]      In opposition to the Motion for Sanctions, plaintiff challenges the July 23 Order's interpretation of *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985).  Plaintiff's position on summary judgment was that the extant caselaw on state action immunity involved private actors suing regulated actors.  In rejecting that position, this Court pointed to several examples in which state action immunity had been applied to government-on-government antitrust actions.  One such case was *Town of Hallie*, which involved four Wisconsin townships suing a neighboring city relating to that city's provision of municipal sewage services.  The Supreme Court in that case applied state action immunity to bar the townships' claims.  Plaintiff now reiterates its argument (previously rejected on summary judgment) "that the plaintiffs in that case were private parties, and not public utilities," and were not "publically empowered."  (Doc. 96, at 4.)  Plaintiff's perseverance on this patently incorrect argument is baffling.  An entire chapter of Wisconsin statutes is devoted to the organization of townships.  *See* Wisc. Stat., Chapter 60.  Under Wisconsin law, "[a] town is a body corporate and politic, with those powers granted by law.  A town shall be designated in all actions and proceedings by its name, as 'Town of ....'."  Wisc. Stat. § 60.01(1).  Wisconsin town boards, among other things, have charge "of all affairs of the town not committed by law to another body or officer or to a town employee" and are empowered to "[e]stablish utility districts."  *Id.*, §§ 60.22, 60.23.  "'Town', as the word is used in Wisconsin, denotes a specific unit of government. ... [A] town may be dissolved through incorporation as a city or village, annexed by an adjoining city or village, or attached to an adjoining town."  Susan C. Paddock, "The Changing World of Wisconsin Local Government," *Wisconsin Blue Book 1997-1998*, at 115.  "The organization and functions of town government are spelled out in the Wisconsin Statutes, based on the requirement of the Wisconsin Constitution that the legislature must provide the same basic form of government for all towns."  *Id.* at 116.  The plaintiffs in *Town of Hallie* – Town of Hallie, Town of Seymour, Town of Union and Town of Washington – were clearly all local government entities, not private actors as plaintiff insists.  Although plaintiff's position on this issue is misguided, that finding is not sufficient to justify sanctions.

For all of the foregoing reasons, the Court finds that the statutory requirements of 28 U.S.C. § 1927 are not satisfied, and that imposition of sanctions against plaintiff or its counsel is therefore unwarranted.[5]  Defendant's Motion for Sanctions (doc. 94) is **denied**.

DONE and ORDERED this 26th day of August, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5]       In a footnote, movant suggests in passing that other sources of authority for sanctions such as Rule 11 and the court's inherent powers should also be considered.  (Doc. 94, at 1 n.1.)  But movant has developed no arguments why the analysis would be materially different under Rule 11 or "inherent powers" than it is under § 1927.  The Court will not fashion movant's arguments under these alternative bases for it.  In any event, the Court perceives no material difference in the outcome of defendant's Motion under either alternative.  *See Walker*, 532 F.3d at 1309 ("To impose sanctions under these inherent powers, the court must first find bad faith."); *Wood*, 2008 WL 2163921, at *3 ("[A] district court has discretion to award Rule 11 sanctions under the following circumstances: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when a party files a pleading in bad faith for an improper purpose.") (quoting *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003)).

-7-